Juanita de los Santos MOSS, Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

No. 79–3738.

United States Court of Appeals, Fifth Circuit.

Unit A

July 29, 1981.

---

* District Judge of the Western District of Texas, sitting by designation.

David A. Kattan, New Orleans, La., for petitioner.

Benjamin R. Civiletti, Atty. Gen., U.S. Dept. of Justice, James P. Morris, Atty., Eric Fisher, Govt. Reg. & Labor Sect., Dept. of Justice, Robert Kendall, Jr., Dept. of Justice, Washington, D.C., for respondent.

Before BROWN and GARZA, Circuit Judges, and CHARLES SCHWARTZ, Jr.*, District Judge.

GARZA, Circuit Judge:

Appellant, Juanita de los Santos Moss, is a native and citizen of the Philippines. On or about July 16, 1977, she was admitted into the United States under a "K visa" as a nonimmigrant alien fiancee of a United States citizen as provided by Section 101(a)(15)(K) of the Immigration and Naturalization Act, (the Act), 8 U.S.C.S. § 1101(a)(15)(K).[1] Under § 214(d) of the Act, 8 U.S.C.S. § 1184(d), if the marriage between the U.S. citizen and the alien occurs within ninety days after entry the Attorney General shall record the lawful admission for permanent residence of the alien and any minor children.[2]

The record indicates that Mrs. Moss had lived with her fiance for a year while in the Philippines and it is undisputed that both parties intended to marry at the time of her entry into the United States. On October 18, 1977, (92 days after her entry) she married the man whom she had planned to marry. There is no doubt that the marriage was bona fide and no allegation has been made that she entered the United States for marriage solely in order to obtain immigration benefits. A child was born of their marriage, however, two months prior to the child's birth Mrs. Moss' husband abandoned her.

On March 16, 1978, the Immigration and Naturalization Service (I.N.S.) issued to Mrs. Moss a show cause order in order to establish her deportability. At the show cause hearing Mrs. Moss admitted that she had married ninety two days after her arrival but contended she was not subject to deportation because she had substantially complied with § 214(d) of the Act. The

---

* District Judge of the Eastern District of Louisiana sitting by designation.

1. 8 U.S.C.S. § 1101(a)(15)(K) provides:
    "The term 'immigrant' means every alien except an alien who is within one of the following classes of nonimmigrant aliens—, (K) an alien who is the fiancee or fiance of a citizen of the United States and who seeks to enter the United States solely to conclude a valid marriage with the petitioner within ninety days after entry, and the minor children of such fiancee or fiance accompanying him or following to join him."
    Visas issued under this sub-paragraph are known as "K visas".

2. 8 U.S.C.S. § 1184(d) provides:
    "A visa shall not be issued under the provisions of section 101(a)(15)(K) until the consular officer has received a petition filed in the United States by the fiancee or fiance of the applying alien and approved by the Attorney General. The petition shall be in such form and contain such information as the Attorney General shall, by regulation, prescribe. It shall be approved only after satisfactory evidence is submitted by the petitioner to establish that the parties have a *bona fide intention* to marry and are legally able and actually willing to conclude a valid marriage in the United States *within a period of ninety days* after the alien's arrival. In the event the marriage with the petitioner does not occur within *three months* of entry of the said alien and minor children, they shall be required to depart from the United States and upon failure to do so shall be deported in accordance with sections 242 and 243. In the event the marriage between the said alien and the petitioner shall occur within *three months* after entry and they are found otherwise admissible, the Attorney General shall record the lawful admission for permanent residence of the alien and minor children as of the date of the payment of the required visa fees. (emphasis added)

Immigration Judge, however, interpreted § 214(d) as a rigid and mandatory time period which must be strictly adhered to and, therefore, refused to allow evidence regarding the reasons why the marriage did not occur within the ninety-day time period. Consequently, the Judge found Mrs. Moss deportable because she was not married within the ninety-day period authorized by her "K visa". The Board of Immigration Appeals [3] upheld the decision of the Immigration Judge.

The testimony at the hearing is not clear as to the reason why the marriage ceremony was not conducted within ninety days of Mrs. Moss' arrival. However, the testimony and record on appeal indicate that illness or other factors beyond Mrs. Moss' control may have caused the wedding to be delayed past the ninety-day time period. On appeal Mrs. Moss contends that § 214(d) does not set forth a hard and fast rule requiring a marriage ceremony within ninety days, but instead allows the ninety-day period to be tolled to compensate for delays beyond the alien's control. She argues that she substantially complied with § 214(d) and requests that her case be remanded in order that she may show that the delay in her marriage was due to no fault of her own. We believe Mrs. Moss' argument has merit.

In 1970 Congress added the "K visa" provision to § 101(a)(15) in order to allow an alien fiancee or fiance to enter the United States to marry a United States citizen. "The purpose behind § 214(d) is to facilitate formation of marital relationships. ... The relevant inquiry, enunciated in the statute, is whether the parties have a *bona fide intent* to marry after the alien enters." *Menezes v. I.N.S.*, 601 F.2d 1028 (9th Cir. 1979) (emphasis added). As a prerequisite to approval and issuance of the "K visa", the Attorney General must be satisfied that the petitioner-citizen and alien have a bona

fide intention to marry soon after the alien's arrival.

Although the fourth sentence of § 214(d) provides for deportation in the event the marriage is not completed within ninety days, it seems the purpose of the time limit is to qualify the intention of the alien to soon marry upon entrance into the United States rather than to place an absolute and mandatory period of time within which the marriage ceremony must occur. "Marriage within the time limit essentially confirms the intent to marry after entry was bona fide." *Menezes v. I.N.S., supra.*

In this case it is beyond dispute that the parties intended to be married within ninety days of Mrs. Moss' arrival and were, in fact, married. It would be incongruous indeed to hold that the very same statute which facilitates entry into the United States for purposes of marriage would require deportation because the ceremony occurs two days late due to circumstances beyond the control of the nonimmigrant alien. As stated in Board Member Appleman's dissenting opinion, Congress did not intend the ninety-day limit to be so rigidly applied that it could not be tolled when, due to circumstances beyond the aliens' control, it becomes impossible to formalize the marriage within ninety days.[4] We hold that Mrs. Moss should have been allowed to show why she could not formalize her marriage within the ninety-day time period and, if she can demonstrate the two-day delay was due to factors beyond her control, the ninety-day time period must be tolled accordingly. For these reasons the decision of the Board of Immigration Appeals is reversed and the case remanded to the Immigration Judge for a determination of cause for the delay of the marriage.

REVERSED and REMANDED.

3. Board Member Irving A. Appleman filed a dissenting opinion.

4. We also find it significant that § 214(d) uses both "ninety days" and "three months" to describe the time period contemplated by the statute. We take notice of the fact that, with the exception of February, any three month period of the year will always amount to more than ninety days. If Congress had intended, as I.N.S. suggests, that the time period of § 214(d) was of controlling importance, we believe Congress would have used greater precision in defining that time period.